United States Courts
Southern District of Texas
**FILED**

JUN 28 2018

David J. Bradley, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § | |
| v. | § § | Criminal No. 18-372 |
| WAEL ABOUGHALI | § § | |
| Defendant. | § § | |

## INDICTMENT

The Grand Jury charges:

### General Allegations

At all times material to this Superseding Indictment, unless otherwise specified:

1. The Medicare Program ("Medicare") was a federal healthcare program providing benefits to individuals who were over the age of 65 or disabled. Medicare was administered by the United States Department of Health and Human Services, through its agency, the Centers for Medicare and Medicaid Services ("CMS"). Individuals receiving benefits under Medicare were referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

3. "Part A" of the Medicare program covered certain eligible home-healthcare costs for medical services provided by a home healthcare agency ("HHA") to beneficiaries requiring home-health services because of an illness or disability causing them to be homebound. Payments for home-healthcare services were typically made directly to a HHA

based on claims submitted to the Medicare program for qualifying services that had been provided to eligible beneficiaries, rather than to the beneficiaries.

4. Physicians, clinics, and other healthcare providers, including HHAs that provided services to Medicare beneficiaries, were able to apply for and obtain a Medicare "provider number." A healthcare provider that was issued a Medicare provider number was able to file claims with Medicare to obtain reimbursement for services provided to beneficiaries. A Medicare claim was required to set forth, among other things, the beneficiary's name and Medicare identification number, the services that were performed for the beneficiary, the date the services were provided, the cost of the services, and the name and identification number of the physician or other healthcare provider that ordered the services.

5. The Medicare program paid for home-health services only if the patient qualified for home-healthcare benefits. A patient qualified for home-healthcare benefits only if:

    a. the patient was confined to the home, also referred to as homebound;

    b. the patient was under the care of a physician who specifically determined there was a need for home healthcare and established the Plan of Care (or "POC"); and

    c. the determining physician signed a certification statement specifying that:

        i. the beneficiary needed intermittent skilled nursing services, physical therapy, or speech therapy;

        ii. the beneficiary was confined to the home;

        iii. a POC for furnishing services was established and periodically reviewed; and

      iv. the services were furnished while the beneficiary was under the care of the physician who established the POC.

## AMEX MEDICAL CLINIC AND REHAB

6. Southwest Total Medical Inc., dba Amex Medical Clinic and Rehab, ("Amex") was a purported medical clinic doing business at 8200 Wednesbury Lane, Suite 390, Houston, Texas 77074.

7. Amex purportedly provided medical services to Medicare beneficiaries from in or around December 2011 through in or around August 2015.

## DEFENDANT

8. **WAEL ABOUGHALI ("ABOUGHALI")**, a resident of Harris County, Texas, was a physician licensed by the State of Texas. **ABOUGHALI** was affiliated with Amex from in or around July 2014 to in or around August 2015.

## Co-Conspirators

9. John P. Ramirez, a resident of Harris County, Texas, was a physician licensed by the Stateof Texas. John P. Ramirez was affiliated with Amex from in or around December 2011 to in or around May 2015.

10. Ann Nowko Shepherd ("Ann Shepherd"), a resident of Harris County, Texas, owned and operated Amex.

11. Akalakachinyem Nwoko, a/k/a Yvette Nwoko, a/k/a Destiny Nowko ("Nwoko"), a resident of Harris County, Texas and the daughter of Ann Shepherd, was a manager of Amex.

12. Co-conspirators of **ABOUGHALI** included HHA owners and operators, who submitted and caused to be submitted claims to Medicare for home-health services that were not medically necessary, not provided or both. These claims, submitted and caused to be submitted by co-conspirators at HHAs, listed **ABOUGHALI** and John P. Ramirez as the purported attending physician of patients.

## COUNT 1

### Conspiracy to Commit Healthcare Fraud
### (Violation of 18 U.S.C. § 1349)

13. Paragraphs 1 through 12 are re-alleged and incorporated by reference as if fully set forth herein.

14. From in or around July 2014 to in or around August 2015, the exact dates being unknown to the Grand Jury, in the Houston Division of the Southern District of Texas, and elsewhere, Defendant

**WAEL ABOUGHALI**

did knowingly and willfully combine, conspire, confederate and agree with others known and unknown to the grand jury, to violate Title 18, United States Code, Section 1347, that is, to execute a scheme and artifice to defraud a healthcare benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations and promises, money and property owned by, and under the custody and control of, said healthcare benefit program, in connection with the delivery of and payment for healthcare benefits, items and services.

## Purpose of the Conspiracy

15. It was a purpose of the conspiracy for Defendant **ABOUGHALI** and his co-conspirators and others known and unknown to the Grand Jury, to unlawfully enrich themselves by (a) providing false and fraudulent POCs, and other medical documents, to co-conspirators at HHAs, (b) causing the submission and concealment of false and fraudulent claims to Medicare, and the receipt and transfer of proceeds from the fraud, and (c) causing the diversion of the proceeds of the fraud for the personal use and benefit of Defendant and their co-conspirators.

## Manner and Means of the Conspiracy

The manner and means by which defendants sought to accomplish the purpose of the conspiracy included, among other things:

16. Co-conspirators at HHAs sent to Amex the names of Medicare beneficiaries or patients to be certified for home-health services.

17. **ABOUGHALI** and his co-conspirators, both known and unknown, made it appear as if Medicare beneficiaries qualified for and received home-health services, when those services were not medically necessary, not provided or both.

18. **ABOUGHALI** signed POCs for Medicare beneficiaries that certified and recertified that patients were under his care, when in fact the patients were not under his care. **ABOUGHALI** also signed POCs for Medicare beneficiaries that certified and recertified that patients were confined to the home, when in fact the patients were not confined to the home.

19. Ann Shepherd paid **ABOUGHALI** to sign false and fraudulent POCs.

20. Ann Shepherd and Nwoko, and others known and unknown to the Grand Jury, sold signed POCs to co-conspirators at HHAs who billed to Medicare claims for purported home-health services that were not medically necessary, not provided or both.

21. From in or around July 2014 through in or around July 2015, Ann Shepherd, Nwoko, and other co-conspirators, known and unknown, submitted and caused the submission of approximately $94,282 in fraudulent claims to Medicare for services that were not medically necessary, not provided, or both on behalf of Medicare beneficiaries for whom **ABOUGHALI** was listed as the purported attending physician for home-health services. Medicare paid Amex approximately $49,085 on these fraudulent claims.

22. From in or around July 2014 through in or around August 2015, co-conspirators at HHAs, known and unknown, submitted and caused the submission of approximately $2.1 million to Medicare in claims for home-health services where **ABOUGHALI** was listed as the purported attending physician. Medicare paid approximately $2.1 million on those claims.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2-4

### False Statements Relating to Health Care Matters
### (Violation of 18 U.S.C. § 1035)

23. Paragraphs 1 through 22 are re-alleged and incorporated by reference as if fully set forth herein.

24. On or about the dates set forth below, in Harris County, in the Southern District of Texas, and elsewhere, Defendant

6

## WAEL ABOUGHALI

did knowingly and willfully make materially false, fictitious, and fraudulent statements and representations, and make and use materially false writings and documents, as set forth below, knowing the same to contain materially false, fictitious, and fraudulent statements and entries, in connection with the delivery of and payment for health care benefits, items, and services, and in a matter involving a health care benefit program, specifically Medicare:

| Count | Medicare Beneficiary | HHA | Approximate Certification Period | Approximate Description | Approximate Medicare Payment |
|---|---|---|---|---|---|
| 2 | R.H. | Texas Tender Care | April 22, 2015 to May 20, 2015 | Certification | $2,148.33 |
| 3 | M.S. | Texas Tender Care | April 22, 2015 to May 20, 2015 | Certification | $2,148.33 |
| 4 | W.M. | Texas Tender Care | April 22, 2015 to May 20, 2015 | Certification | $2,148.33 |

All in violation of 18 U.S.C. § 1035.

# CRIMINAL FORFEITURE

## (18 U.S.C. § 982(a)(7))

Pursuant to Title 18, United States Code, Section 982(a)(7), the United States of America gives notice to Defendant **WAEL ABOUGHALI** that upon conviction, all property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such offense is subject to forfeiture.

### Money Judgment

25. Defendant **WAEL ABOUGHALI** is notified that upon conviction, a money judgment may be imposed equal to the total value of the property subject to forfeiture, which is approximately $2.1 million.

### Substitute Assets

a. Defendant **WAEL ABOUGHALI** is notified that if any of the forfeitable property, or any portion thereof, as a result of any act or omission of Defendants or their co-conspirators: cannot be located upon the exercise of due diligence;

b. has been transferred, or sold to, or deposited with a third party;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States to seek forfeiture of any other property of defendants up to the total value of the property subject to forfeiture, pursuant to Title 21, United States Code, Section 853(p), incorporated by reference in Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

ORIGINAL SIGNATURE ON FILE
FOREPERSON

RYAN K. PATRICK
UNITED STATES ATTORNEY

SCOTT P. ARMSTRONG
TRIAL ATTORNEY
CRIMINAL DIVISION
FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

TINA ANSARI
ASSISTANT UNITED STATES ATTORNEY
U.S. ATTORNEY'S OFFICE
FOR THE SOUTHERN DISTRICT OF TEXAS